PEOPLE *v.* EDWARDS.

INTOXICATING LIQUORS—CRIMINAL LAW—LOCAL OPTION—NUMBER OF SALOONS.

Under an information charging respondent with engaging in business as a liquor dealer in a village where only one saloon was authorized by Act No. 291, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 5093), another liquor dealer having first secured a license during the year, and respondent obtaining a subsequent permit, no proof should have been received that local option had been adopted in the county in 1910, and had been repealed in 1912, without averments to such effect in the information; it was insufficient to charge that the issuance of a license to respondent was "illegal and contrary to the pro-

visions of Act No. 313, Pub. Acts 1887, as amended," and that the village contained less than 500 population: the adoption of prohibition and subsequent repeal were material elements of the offense to be alleged and proven.

Exceptions before sentence from Lapeer; Smith, J. Submitted January 21, 1913. (Docket No. 119.) Decided March 22, 1913.

Thomas Edwards was convicted of selling intoxicating liquor illegally. Reversed, respondent discharged.

*Herbert W. Smith*, Prosecuting Attorney, for the people.

*B. F. Reed*, for respondent.

STEERE, C. J. Respondent was convicted in the circuit court of Lapeer county on October 21, 1912, of having engaged in the business of selling intoxicating liquors at the village of Clifford on May 1st to the 15th, 1912, in violation of the provisions of Act No. 313, Pub. Acts of 1887, as amended. He has removed the case to this court on exceptions after conviction and before sentence.

The moral turpitude in this case, if any, appears to rest primarily with the trustees of said village, who, either through ignorance or design, laid the foundation for trouble and litigation by attempting to simultaneously authorize two saloons in their municipality where only one could be legally licensed, according to the population. Clifford is an incorporated village of 308 inhabitants, located in Lapeer county, which county adopted local option, prohibiting the sale of intoxicating liquor within its boundaries, at the spring election of 1910, and on resubmission of the question to its electors in the spring of 1912 returned to the license system. Section 39 of Act No. 291, Pub. Acts 1909, concludes as follows:

"It is understood that in counties that have adopted local option or may hereafter adopt the same and afterwards vote to return to the license system, there may be

established saloons not to exceed one to every five hundred inhabitants of any township, village or city in said counties."

Shortly after the result of the spring election of 1912 was known, respondent and a man named Jacob Yerden became spirited rivals for a license to engage in the saloon business in said village. On April 8, 1912, each filed an application with the village council for a license, each therefor using an old form of blank not complying with the requirements of the liquor law then in force. The council, however, assumed to act on them tentatively, laying Yerden's on the table and accepting respondent's contingently, providing that various things should be done and promised by him before his bond should be accepted. Various proceedings were had by and before the council while the first defective applications were pending, and favorable action was ultimately attempted on both; but, the county treasurer refusing to issue licenses on them, they were then abandoned and new applications, complying with requirements of the statute, each sworn to by the applicant on April 25th, were presented to the council and accepted at a meeting held April 26th, together with the accompanying bonds, which seem to have been the same ones presented with former applications. The village clerk, who produced the records of the council and verified them, testified, under objection, that the record of the proceedings of said meeting of April 26th correctly indicated what occurred and the order of business then transacted; that, in fact, Yerden's application and bond were acted on first, just as the entry thereof appears in the record. The application and bond of both Yerden and respondent were accepted and approved at this meeting. Both filed the same with the county treasurer, paid the license fee, received the receipt and notice provided for, posted the same up in their respective barrooms, and opened their saloons for business on May 1, 1912.

When arraigned, respondent declined to plead, and a plea of not guilty was entered in his behalf. Thereupon

his counsel moved the court to quash the information for various reasons, which amounted, in effect, to a demurrer to the same. This motion was overruled, and the trial proceeded. Objection was first made to the introduction of any testimony under the information and during the trial seasonable objections were made, and exceptions taken, to properly preserve respondent's rights.

There was little dispute as to the facts; the principal contention being over their admissibility and sufficiency under the information. The population of the village of Clifford and its corporate organization were admitted. It was proved, and not denied, that respondent ran a bar in his hotel and sold intoxicating liquor there during the time charged. The records of the village council were introduced and proof made of the proceedings before and by that tribunal, followed by proof of issuing the two licenses as before stated. After having rested, the prosecution was permitted, against objection, to reopen the case, and introduce certain records to show "that the so-called local-option law went into effect on May 1, 1910, and out of force April 30, 1912." To this counsel for respondent further objected specifically, for the reason that the information did not charge that local option was ever adopted in the county, or that the county ever returned to the license system, being two things necessary to prove in order to make out a *prima facie* case and therefore necessary to allege in the information. No testimony was introduced by respondent and a motion for a directed verdict in his favor was denied. The case was submitted without argument to the jury.

In his charge, after briefly reviewing the testimony, the court said, amongst other things:

"So I say to you, gentlemen, that for the purposes of this record, as a matter of law, the respondent is guilty as charged, and, while I cannot oblige you to render a verdict convicting him, I say to you it is your duty after you have entered your jury room to return a verdict of guilty in this case."

The first portion of the information filed against respondent charges him in the usual and familiar form with engaging in the sale of intoxicating liquor—

" Without first having his application for a license to engage in said business accepted and approved by the village council of the said village of Clifford, and without having a bond approved by said village council, and without having paid to the county treasurer of the said county of Lapeer the annual tax required by law to be paid, to wit, five hundred dollars, and without having a receipt and notice of the payment of such tax posted up in the place where said liquors were kept for sale, he, the said Thomas Edwards, not being then and there a druggist," etc.

With nothing further to qualify this portion of the allegations, a violation of the statute is charged. But, inasmuch as the proof would show without controversy that respondent had made application to the village council and presented a bond, that said council had approved the same, that he had paid the annual tax and posted up a receipt and notice thereof in his place of business, the information proceeds with an allegation of these facts and an averment of their invalidity, charging that the incorporated village of Clifford contained but 308 inhabitants; that on April 26, 1912, the council of said village approved the application, and accepted the bonds of Jacob Yerden before those of respondent; that the action of said council in approving the application and bond of respondent and the issuing of a license to him by the county treasurer were "illegal and contrary to the provisions of Act No. 313 of the Public Acts of the State of Michigan for the year 1887, as amended." The particulars in which and the reason why the same is contrary to the provisions of said act are not stated. The reasons claimed at the trial, and sought to be proved, are that Lapeer county had at one time been under the local-option law and returned to the license system. The information is silent upon that subject. It does not aver facts sufficient to negative the valid-

174 MICH.—29.

ity of the official action through which respondent obtained his license, and it shows that he had a license, in obtaining which his personal conduct was in compliance with law. The case would necessarily turn on the unlawful conduct of the village council, which would furnish respondent no protection if properly alleged and proven to be unlawful.

Were it not for the claimed, but not alleged, facts that local option was once adopted and the license system again resumed in Lapeer county, the information in its latter part states a complete defense to its earlier charge that respondent was selling in violation of the statute. The allegation that the population of the village was less than 500, standing alone, imputes no illegality to the proceedings under which respondent's license was issued.

It is generally held that courts cannot, unless required by statute, take judicial notice of the local adoption of a general law by the votes of cities, counties, or villages, unless the statute particularly relates to functions of government, and in harmony with that rule the adoption of local option has been so treated, and we think so held, in this State. *People* v. *Adams*, 95 Mich. 541 (55 N. W. 461); *People* v. *Keefer*, 97 Mich. 15 (56 N. W. 105); *People* v. *Bennett*, 107 Mich. 430 (65 N. W. 280); *Paul* v. *Benzie Circuit Judge*, 169 Mich. 452 (135 N. W. 283); *People* v. *Murphy*, 93 Mich. 41 (52 N. W. 1042). In the latter case it is said:

"It is contended by the prosecution that the court was authorized to take judicial notice that prohibition was in force in Van Buren county. Without passing upon the question of whether it would be competent for the legislature to provide that the resolution or enactment of the board of supervisors be treated as a general law, of which courts may take judicial cognizance, it is sufficient to say that by the very clear provisions of the act in question the legislature negatived any such purpose, but has prescribed what shall constitute the evidence of the fact that the provisions of the law are in force in a particular county."

The information as framed renders the former existence

of local option in Lapeer county a material fact necessary to constitute the offense, and therefore necessary to be set forth with certainty in the information before it can be proven at the trial. The rule on that proposition is elementary and citation of authorities superfluous.

Counsel for the prosecution contend that this was a matter of defense, to be shown by the accused, citing numerous authorities holding that in pleading a statute it is not required to negative exceptions not within the enacting clause. We do not regard that rule as applicable to the situation presented by this information. Here acts complying with the statute are shown which negative the previous allegation of its violation, and then, by way of avoidance of those acts which purport compliance, it is claimed, and necessarily must be proven to convict, that extraneous facts exist from which the invalidity of such acts necessarily follows.

We conclude that the motion to quash the information should have been granted. The conviction must therefore be set aside, and respondent discharged.

McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred. MOORE, J., did not sit.