[Crim. No. 1859. In Bank.—October 5, 1914.]

THE PEOPLE, Respondent, v. JOSEPH MUELLER, Appellant.

INTOXICATING LIQUORS—PROSECUTION UNDER LOCAL OPTION LAW— JUDICIAL NOTICE OF ELECTION.—In a prosecution for an unlawful sale of alcoholic liquors in "no-license territory," under the Wyllie law (Stats. 1911, p. 599), the court cannot take judicial notice of the result of a local election to put the law in operation in the district where the sale was made, but the character of the territory as "no-license" must be proved as provided by the act itself, or by other sufficient evidence.

ID.—WYLLIE LOCAL OPTION LAW—NATURE AND OPERATION OF ACT.—In respect of this question, the Wyllie law is not essentially different from other laws operating upon specific classes of things. It is

general, in that its force extends throughout the state; but it is in actual operation only where the subjects, or the prescribed conditions, upon which alone it is to operate, exist. The people of a city, town or district do not, by voting against license, enact the law in that territory; the law, in substance, declares that no liquor licenses shall be issued in any city, town or district in which the sentiment is not in favor of it. The election is authorized solely to afford a means whereby this sentiment may be conclusively determined, and it merely establishes the local *status* or condition.

APPEAL from a judgment of the Superior Court of Tehama County and from an order refusing a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Jas. T. Matlock, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SHAW, J.—The defendant was convicted of an unlawful sale of alcoholic liquors in "no-license" territory under the provisions of the act generally known as the "Wyllie law" (Stats. 1911, p. 599). His appeal is from the judgment and from an order denying his motion for a new trial. It will be necessary to consider but one point arising in the case.

The court below instructed the jury, as a matter of law, that the city of Red Bluff was "no-license territory" by reason of an election held under the Wyllie Act. There was no evidence on the subject. The charge was that the liquor was sold within the city of Red Bluff, the same being "no-license" territory.

The act provides for the calling of an election in any city or town, or in that part of a supervisorial district not within a city or town, to vote for or against licensing the sale of alcoholic liquors within such territory, and declares that unless the poll at such election shows a majority vote in favor of license, sales of alcoholic liquors within the territory shall thereupon be forbidden and shall be punishable as a misdemeanor. There are certain exceptions not here involved and which it is unnecessary to notice. It appears then, that the question whether or not the city, town, or district is "no-license territory," as defined in the act, will depend on

the result of such election. It is claimed that the court may take judicial notice of the vote so given, and of its effect if not in favor of license, to make the territory ''no-license territory'' and to put the law in force therein.

Upon this question the courts of this state have not heretofore spoken. In other states having laws of this kind there is a sharp conflict in the decisions. The courts of Georgia, Idaho, Indiana, Maryland, and Virginia, hold that judicial notice may be taken of the result of the election and its effect to put the law in operation in the territory. (*Combs* v. *State,* 81 Ga. 783, [8 S. E. 318]; *Woodward* v. *State,* 103 Ga. 496, [30 S. E. 522]; *Oglesby* v. *State,* 121 Ga. 602, [49 S. E. 706]; *State* v. *Schmitz,* 19 Idaho, 566, [114 Pac. 1]; *State* v. *Ade,* 178 Ind. 588, [99 N. E. 983]; *Jay* v. *O'Donnell,* 178 Ind. 282, [98 N. E. 355]; *Slymer* v. *State,* 62 Md. 237; *Jones* v. *State,* 67 Md. 258, 259, [10 Atl. 216]; *Mitchell* v. *State,* 115 Md. 360, [80 Atl. 1020]; *Savage* v. *Commonwealth,* 84 Va. 582, [5 S. E. 563]; *Thomas* v. *Commonwealth,* 90 Va. 95, [17 S. E. 788].) In Alabama, Michigan, Mississippi, Missouri, Montana, Oregon, and Texas, the decisions are that although the court will take notice of the terms and effect of the law, as a general law, it cannot take notice of the result of the local election by which it is put in operation, or prevented from operation, in the local territory. (*Grider* v. *Tally,* 77 Ala. 427, [54 Am. Rep. 65]; *Ex parte Reynolds,* 87 Ala. 142, [6 South. 335]; *People* v. *Murphy,* 93 Mich. 45, [52 N. W. 1042]; *People* v. *Edwards,* 174 Mich. 450, [140 N. W. 473]; *Norton* v. *State,* 65 Miss. 297, [3 South. 665]; *Bryant* v. *State,* 65 Miss. 435, [4 South. 343]; *West* v. *State,* 70 Miss. 598, [12 South. 903]; *State* v. *O'Brien,* 35 Mont. 500, [10 Ann. Cas. 1006, 90 Pac. 514]; *Gue* v. *Eugene,* 53 Or. 282, [100 Pac. 254]; *Gay* v. *Eugene,* 53 Or. 289, [18 Ann. Cas. 188, 100 Pac. 306]; *State* v. *Wilson,* 174 Mo. App. 301, [143 S. W. 534]; *State* v. *Hall,* 130 Mo. App. 170, [108 S. W. 1077]; *Shively* v. *Lankford,* 174 Mo. 546, [74 S. W. 835]; *Craddick* v. *State,* 48 Tex. Cr. Rep. 385, [88 S. W. 347]; *Bills* v. *State,* 55 Tex. Cr. Rep. 543, [117 S. W. 835]; *Kinnebrew* v. *State* (Tex. Cr.), 150 S. W. 775; *Dorman* v. *State,* 64 Tex. Cr. Rep. 104, [141 S. W. 526].)

We believe the decisions last mentioned are more in accord with general principles. In respect of this question, the Wyllie law is not essentially different from other laws oper-

ating upon specific classes of things. It is general, in that its force extends throughout the state. But it is in actual operation only where the subjects, or the prescribed conditions, upon which alone it is to operate, exist. The people of a city, town, or district do not, by voting against license, enact the law in that territory. The law, in substance, declares that no liquor licenses shall be issued in any city, town, or district in which the sentiment is not in favor of it. The election is authorized solely to afford a means whereby this sentiment may be conclusively determined, and it merely establishes the local *status* or condition. This is the gist of the decision in *Ex parte Beck,* 162 Cal. 701, [124 Pac. 543], holding that the act is not invalid as a delegation of legislative power to the voters of the territory. This local *status* or condition, therefore, is not established by the law; it remains to be determined from time to time, as the electors desire. It is not a fact "established by law," within the meaning of subdivision 2 of section 1875 of the Code of Civil Procedure and is not a subject of judicial notice under that section. It depends on the result of a local election, manifested by the local record. The law establishes a method whereby the condition necessary to its local operation may be brought into existence; but the condition so produced is not "established by law," it is a simple fact to be established by evidence. The fact that it is produced by proceedings authorized by the law does not, of itself, require the court to take judicial notice of it. The case is not different from any other where, the law operating only upon certain things, the existence of the thing must be made to appear.

The courts take judicial notice of the existence and bounds of a city (Stats. 1889, p. 372; *Pasadena* v. *Stimson,* 91 Cal. 256, [27 Pac. 604]; *People* v. *Potter,* 35 Cal. 112); but not of the boundaries of supervisorial districts. Such districts are laid out by the supervisors of the particular county and the proceedings of such county boards are governed by the same rule as those of a city council in this respect; their orders and ordinances are not subjects of judicial notice. (1 Greenleaf on Evidence, 16th ed., sec. 44; 4 Wigmore on Evidence, sec. 2572, p. 3608; 2 Dillon on Municipal Corporations, 5th ed., sec. 639; *Lucas, Turner & Co.* v. *San Francisco,* 7 Cal. 474; *Carpenter* v. *Shinners,* 108 Cal. 158, [41 Pac. 473].) There is an exception, immaterial here, with regard to judicial

notice of ordinances by local inferior courts established to enforce local ordinances. (*Ex parte Davis,* 115 Cal. 445, [47 Pac. 258] ; *Ex parte Hansen,* 158 Cal. 497, [111 Pac. 528].) But the precise fact of which it is here claimed that judicial notice must be taken, is the result of the vote taken in the territory, pursuant to the act. This vote does not make the territory in which it is taken a political subdivision of the state constituted for the purpose of carrying on a part of the governmental functions of the state. It does not become a governmental agency similar to a municipal corporation, or a county, of which the courts, for that reason largely, are bound to take notice. The only effect of the election is to produce a *status* or condition upon which the law may operate. It does not give the territory any power, or erect it into a corporation or body politic. The holding of the election and the record of the result are matters in all essentials similar to the records of the votes and resolutions of city councils and county boards by which ordinances are adopted and passed. These, as we have seen, are not matters of judicial knowledge, but must be proven as other facts.

The act, itself, contains a strong implication that the character of the territory is not to be judicially noticed, but must be shown by evidence. The last clause of section 10 provides that in any prosecution under the act the record of the governing body of the city, town, or district, showing the number of votes cast at the election, or a duly certified copy thereof, shall be *prima facie* evidence that the territory in which the election was held is "no-license" territory. If the courts must take judicial notice of the fact, this provision would be wholly useless. The necessary inference is that the legislature believed that proof would be required, as of ordinary matters *in pais,* and that this provision was intended to facilitate such proof.

Furthermore, it is to be observed that the condition of "no-license" territory, produced by an election under the act, is not intended to be stable or fixed; it remains only until at a subsequent election under the act a different result is produced, and this may occur every two years (secs. 6 and 11). The election itself may be contested by any voter of the territory, and in such case the force and effect of the election is not changed until the contest is finally decided (sec. 9). Thus the character of the territory is subject to change at

any time, if there is a contest. It is obvious that the "no-license" territory, so created, is not intended to be a permanently established institution, as in the case of a municipal corporation, and there is not the same reason for making it the subject of judicial notice.

Upon all these grounds our conclusion is that the courts do not take judicial notice that a given city, town, or district is "no-license territory" under this law, that it must be proven by evidence as provided in the act itself, or by other sufficient evidence, and that the court below erred in giving the instruction complained of.

The judgment and order are reversed.

Sloss, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.