[Civ. No. 1938.   Third Appellate District.—June 25, 1919.]

## CARRIE BELLE RANDOLPH et al., Respondents, v. ALVIS G. HUNT, Appellant.

[1] NEGLIGENCE—DUTY OF DRIVER OF AUTOMOBILE.—Under sections 20 and 22 of the Statutes of 1915 (Stats. 1915, p. 397), it is the duty of the driver of an automobile upon a public highway to drive the car in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, and under no circumstances to exceed thirty miles per hour.

[2] ID.—RULE OF REASONABLE PRECAUTION.—The rule of reasonable precaution which the law enjoins upon the driver of an automobile upon a public highway includes the necessity of making certain that foot-passengers are aware of the rearward approach of the vehicle, that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach, and finally, that the vehicle is under such control as that it may be stopped promptly.

[3] ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—QUESTION FOR JURY.—In an action for damages based upon negligence, the burden of proving contributory negligence is upon the defendant; and where reasonable minds might draw different conclusions upon the question of negligence, the question is for the jury, and its finding is conclusive.

[4] ID.—RIGHT OF PEDESTRIAN ON HIGHWAY.—The fact that a pedestrian who is injured by an automobile is walking on the left-hand side of the highway does not, of itself, constitute contributory negligence. A pedestrian has the right to use all parts of a road or street, being chargeable with the exercise of a reasonable degree of care to be determined under all the circumstances.

[5] ID.—STRESS OF SUDDEN PERIL—ACTS OF DECEASED EXCUSABLE.— In this action for damages for the death of the father of the plaintiffs while traveling upon foot upon a public highway through having been struck by defendant's automobile, there was a reasonable excuse for the presence of the deceased on the east or left-hand side of the highway, and, as he was not aware of the approach of the machine until it was virtually upon him, the driver not having given timely warning, the deceased was, under the stress of the sudden peril, excusable for jumping as he did to escape the injury.

---

4. Reciprocal duty of driver and pedestrian to use care, notes, 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

[6] ID.—OPERATION OF CAR BY DEFENDANT—LIABILITY—SUFFICIENCY OF COMPLAINT.—The owner of such automobile, to be liable for the misconduct in the operation of the machine, must have been driving, either personally or through his agent, or must have had the right to direct and control the movements of the machine. A complaint, however, is sufficient, in the absence of a special demurrer or uncertainty, if it appears indirectly, or by way of recital, that defendant operated and drove the car.

[7] ID.—CREDIBILITY OF WITNESSES—QUESTION FOR JURY—VERDICT—PROVINCE OF APPELLATE COURT.—In such action, the defendant having set up the defense that the automobile was not in his possession or under his control but in the possession and under the control of the driver to whom it had been loaned, and the jury having brought in a verdict in favor of the plaintiffs, the appellate court is bound to assume that the jurors did not believe the defendant's story, and it cannot say, in the absence of any showing to the contrary, that the jury acted arbitrarily, or otherwise than in good faith and with an honest purpose. Even though there are certain circumstances that tend to discredit somewhat the statements of particular witnesses, the appellate court may not interfere with the jury's discretion in that particular.

[8] ID.—OWNERSHIP OF AUTOMOBILE—PRESUMPTIONS—CONFLICTING TESTIMONY.—From the ownership of the automobile by the defendant there arises the presumption that it was being used for his purposes; and such presumption, being legally sufficient to support a verdict, is legally sufficient to create a conflict in the evidence, notwithstanding the plaintiffs introduce no evidence to rebut the testimony of defendant's witnesses that the machine was not being used for his purposes.

[9] ID.—USE OF CAR BY THIRD PERSON—DUTY OF OWNER WHILE PASSENGER THEREIN.—If the owner of an automobile lends his machine to another and on invitation becomes a passenger therein, in the absence of any agreement to the contrary, the owner has the right, and, indeed, it is his duty to prevent, if possible, the driver from operating the machine in a reckless and dangerous manner and in violation of law. He cannot sit idly by and refrain from remonstrance, at least, while knowing that the driver is thus endangering the lives of others. If he has the opportunity to restrain the driver and fails to take advantage of it, he should be held responsible for the consequences.

[10] ID.—RIGHT OF CONTROL BY OWNER—INSTRUCTIONS.—Under the facts of this case it was not error to instruct the jury "that the

6. Liability of owner of automobile when car is being used by borrower or hirer, note, 33 L. R. A. (N. S.) 81.

9. Owner's presence in automobile operated by another as affecting former's liability, note, 2 A. L. R. 888.

defendant . . . as the owner and occupant of this automobile, had the *right to control* the same, in the absence of some agreement or arrangement, express or implied, whereby he parted with such *right of control* at the time of the accident. Whether or not such an agreement or arrangement was made is a question of fact for the jury to determine. If you find from the evidence that the defendant . . . had not parted with such *right of control* and that the deceased was killed as the result of the negligent operation of the car, as alleged in the complaint, your verdict must be for the plaintiffs."

[11] ID.—SUDDEN PERIL TO DECEASED—OMITTING PRECAUTIONS EXCUSABLE—CORRECT INSTRUCTION.—An instruction "that if the deceased was suddenly put in peril without having sufficient time to consider all the circumstances, he is excusable for omitting some precaution or making an unwise choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault. In such case, even if in bewilderment he runs directly into the very danger which he fears, he is not at fault," is correct as an abstract statement of law, and under the evidence in this case was pertinent.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mastick & Partridge, Elmer W. Armfield and Arthur B. Eddy for Appellant.

Arthur C. Huston and Harry L. Huston for Respondents.

BURNETT, J.—There is substantial evidence justifying the following statement of the facts as made in the brief of respondents: The deceased, Samuel T. Randolph, accompanied by his son, Ansel Randolph, was driving a cow south on the state highway leading from Woodland to Davis, in Yolo County. The country is level and the view unobstructed. The two Randolphs were in a buggy, and, because of the difficulty in thus driving the cow, the deceased left the vehicle and proceeded down the highway on foot, the son following immediately behind in the buggy. After going a short distance, an automobile horn was sounded and a machine came along and passed them without accident, the buggy being on the right-hand side of the road looking

south, the cow on the right-hand side of the paved portion of the highway, and the deceased Randolph on the extreme east side of the road. This car did not belong to the defendant. After it passed, the elder Randolph started from the east side of the road toward the cow on the other side to continue driving her south. As he reached the left-hand portion of the paved highway an automobile owned by the defendant, traveling at a high rate of speed, estimated to be not less than forty miles per hour, passed the buggy in which young Randolph was sitting and which was following along behind the cow and the elder Randolph. As it passed the buggy, an occupant of the automobile sounded an alarm by calling to Mr. Randolph, who was standing on the road facing south. Mr. Randolph, hearing the machine, possibly became confused; in any event, he jumped from the paved portion of the road, easterly, supposing, probably, that the automobile would pass down the pavement and between him and the cow. Almost simultaneously the automobile struck the deceased, throwing his body thirty-four feet from the point of contact with the machine. The automobile turned to the left with both brakes locked and continued between the paved portion and the highway for a distance of ten posts, or about eighty feet. After passing ten posts it collided with the fence bordering the highway, cutting four posts squarely in two and almost cutting the fifth one. It then traveled a distance of thirty-five posts, or about 250 feet, before it stopped, thus clearly indicating its great rate of speed at the time of the accident. Mr. Randolph lived about two weeks, dying on the 20th of April, and he left a surviving widow and ten children, who are all respondents herein.

The foregoing facts reveal a case of negligence on the part of the driver of the automobile, which may be said to be the proximate cause of the death of Mr. Randolph.

[1] The duty of a driver of an automobile in relation to the rights of others traveling upon the highway is set forth in sections 20 and 22 of the Statutes of 1915, page 397, and it is sufficient to say that they require that he shall drive the car in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper and under no circumstances to exceed thirty miles per hour.

[2] In a case somewhat similar to this, the supreme court,

in *Raymond* v. *Hill*, 168 Cal. 475, [143 Pac. 748], construing the rule of reasonable precaution which the law enjoins, declared that it includes "the necessity of making certain that foot-passengers are aware of the rearward approach of the vehicle; that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach, and finally, that the vehicle is under such control as that it may be stopped promptly." The testimony of the witnesses for plaintiffs shows that none of these conditions was observed by the driver, and hence that he violated a duty he owed to the deceased and was chargeable with actionable negligence.

[3] Nor can it be maintained that the only rational inference is that deceased was guilty of contributory negligence. The burden, of course, was upon defendant to establish this defense. Where reasonable minds might draw different conclusions upon the question of negligence, the question is for the jury and its finding is conclusive. (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, [116 Pac. 513].) The argument of appellant is based largely upon the assumption that the testimony of his witnesses is true and should have been accepted by the jury. His witnesses do indeed make a strong showing in favor of the contention that the only negligence in the case was that of the deceased, but a very different aspect is presented by the evidence of the plaintiffs, and, we think, it cannot be doubted that there is ground upon both of these questions for a rational inference adverse to appellant.

[4] It may be added that the claim of contributory negligence by reason of the fact that deceased was on the east side of the highway is, in our judgment, without merit. It is, of course, true that a pedestrian has the right to use all parts of a road or street, being chargeable with the exercise of a reasonable degree of care to be determined under all the circumstances of the case. In the Raymond case it is said: "It was legally permissible for the defendant to use the easterly or left-hand side of the highway as he undertook to use it, and no negligence could be predicated merely upon such use, it appearing that the roadway was of ample width to permit that use with safety to pedestrians and a clear passage to approaching vehicles." (See, also,

*Stohlman* v. *Martin,* 28 Cal. App. 338, [152 Pac. 319].)

**[5]** Herein there was a reasonable excuse for the presence of deceased on the east side; it is a fair inference that the traveled portion of the road was clear; that there was ample room for the appellant to pass without endangering or injuring anyone; that the driver did not sound the horn or give any warning of his approach until he passed the buggy; that deceased was not aware of his approach until the machine was virtually upon him, and that, under the stress of sudden peril, he was excusable for jumping as he did to escape the danger. (*Blackwell* v. *Renwick,* 21 Cal. App. 131, [131 Pac. 94].)

The case seems to have been tried with care, the fullest opportunity was given to both parties to support and vindicate their contentions, and no complaint is made of any ruling of the court as to the admissibility of evidence. Appellant does, however, assail the action of the court in overruling the demurrer to the complaint, and in giving certain instructions to the jury. And these considerations will receive our attention.

The complaint alleged: "That on or about the seventh day of April, 1916, while the said Samuel T. Randolph was driving a cow on the public highway in the said county of Yolo, assisted by his son, Ansel Randolph, a plaintiff herein, who was at said time in a buggy drawn by a horse, an automobile owned and occupied by the defendant herein was, at said time, so carelessly and negligently driven on said public highway that it collided with the said Samuel T. Randolph, inflicting injuries which resulted in his death, on the twentieth day of April, 1916; that said automobile so owned and occupied by the said defendant was not driven in a careful manner with due regard for the safety and convenience of pedestrians and of all other vehicles or traffic upon said highway; that the same was not, at said time, operated or driven in a careful or prudent manner and at a rate of speed that was reasonable and proper having regard to the traffic and use of the said highway; that at said time said automobile was operated and driven at such a rate of speed as to endanger the life and limb of the said Randolph; that by reason of the said negligence and carelessness of the said defendant in so operating and driving the said automobile the same collided with the said Ran-

dolph as aforesaid, inflicting injuries causing his death; that the death of the said Randolph was due to the negligence and carelessness of said defendant herein, as aforesaid.''

[6]   There was no special demurrer to the complaint but the contention of appellant is that a cause of action was not stated for the reason that the complaint does not allege that the automobile was operated by the defendant. The gravamen of the charge consists, manifestly, in the speed and recklessness with which the machine was run. A material fact, therefore, was the responsibility of appellant for this want of care in the operation of the machine. Appellant, to be liable for the consequences of this misconduct, must have been driving either personally, or through his agent, or must have had the right to direct and control the movements of the machine. Hence, it is claimed that there should have been an express averment to that effect, and that it was not sufficient to aver that appellant was the owner and occupant of the automobile. But the most that can be said is that there is a defective allegation of appellant's connection with the driving of the car. It does appear indirectly, rather by way of recital, it is true, that defendant operated and drove the car. This was sufficient in the absence of a demurrer for uncertainty. Moreover, the issue was directly tendered by the answer in the following averment: ''But in that behalf this defendant alleges that the said automobile was not in the possession or control of this defendant but was at said time in the possession and control of one Evans Triggs.'' It may be added that no objection was offered to the introduction of evidence, and the complaint was treated at the trial as though it were sufficient. It is quite apparent, therefore, that appellant suffered no prejudice by reason of said defect, if we admit that it existed. The question is thoroughly considered in *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318, [147 Pac. 90], and *Boyle* v. *Coast Imp. Co.*, 27 Cal. App. 714, [151 Pac. 25], and each is decisive of the controversy here.

One of the important points in the case is whether there was, in fact, sufficient evidence to hold appellant responsible for the acts of the colored man, Triggs, in driving the car. We have already called attention to the averment of the answer in that respect and we may state that the driver, appellant and his son, all testified substantially that Triggs

borrowed the car to go to Sacramento in quest of employment and that he invited appellant to go along to recommend him at a certain garage in said city. But notwithstanding this testimony, respondents contend that there are two theories, upon either of which the verdict of the jury may be justified. The first is that the jury was warranted in rejecting the story as untrue and holding that there was no such arrangement between Hunt and Triggs whereby the car was loaned to the latter. The second is, that if said car was borrowed, appellant did not part with control of it and that it was his duty as owner and occupant to see that it was operated in a careful and prudent manner, and that he is responsible for the consequences of his violation of this duty.

[7] As to the first of these contentions, it cannot be said here that the jury was bound to accept the statement of said witnesses as true. Being the exclusive judges of the weight of the evidence and the credibility of the witnesses, if the testimony did not carry conviction to their minds, they had the legal right to reject it. We must assume that they did not believe the story, and we cannot say, in the absence of any showing to the contrary, that the jury acted arbitrarily, or otherwise than in good faith and with an honest purpose. We would not be justified by the record in branding the statement of these witnesses as false, although there are certain circumstances that tend somewhat to discredit it, but we are not in a position to interfere with the jury's discretion in that particular.

[8] But it is said by appellant that there was no evidence to the contrary, and, therefore, it was the duty of the jury to find upon this issue in his favor. It is not disputed that from the ownership of the automobile the presumption arises that it was being used for appellant's purposes. (*West* v. *Kern*, 88 Or. 247, [L. R. A. 1918D, 920, 171 Pac. 413, 1050]; *McWhirter* v. *Fuller*, 35 Cal. App. 288, [170 Pac. 417].) But it is claimed that this presumption was no longer of any effect, after the introduction of testimony by witnesses to the contrary, and that the jury could not legally be influenced by it in finding a verdict. It amounts to the contention that said presumption would be sufficient to support the verdict if there were no evidence to the contrary, but it is insufficient in the presence of ad-

verse evidence.  We cannot understand how a presumption
can be thus changed in its character as evidence.  If it is
legally sufficient to support a verdict, it must be legally
sufficient to create a conflict in the evidence.  We may add
that appellant's view is opposed to the law as provided in
subdivision 2 of section 2061 of the Code of Civil Pro-
cedure, and as interpreted by the supreme and appellate
courts of this state.

In commenting upon a certain statement made by the
supreme court in the case of *Adams* v. *Hopkins*, 144 Cal.
36, [77 Pac. 712], this court, in *Keating* v. *Morrissey*, 6 Cal.
App. 171, [91 Pac. 680], said: "The rule as thus stated
is undoubtedly sound and applicable to all disputable pre-
sumptions of fact.  In truth, their very characterization
as 'disputable presumptions' carries with it necessarily the
right to controvert them by other evidence and the com-
plete exhaustion of their force when evidence has been
introduced sufficient to destroy the verity of the facts for
which, until then, the law, for reasons of expediency, makes
them responsible vouchers.  The presumption of a con-
sideration is, indeed, enough to support the note, in the
absence of evidence to the contrary.  But in whom is vested,
under our system, the exclusive province of determining
when there is *evidence* to *the contrary?*  There must be, as
counsel will concede, a determination by somebody that
there is in fact evidence to the contrary.  The fact that
the record here *seems* to show 'evidence to the contrary' is
not enough, so far as our power over the verdict and find-
ings is concerned.  It must have been 'evidence to the
contrary' to which the proper tribunal has given such
weight as to enable it to say that such 'evidence to the
contrary' has overcome and dispelled the presumption."
It may be added that the supreme court declined to order
the case up.  The same principle is declared in *Ruth* v.
*Krone*, 10 Cal. App. 770, [103 Pac. 960]; *Reclamation Dis-
trict No. 70* v. *Sherman*, 11 Cal. App. 399, [105 Pac. 277];
*Estes* v. *Ballard*, 22 Cal. App. 344, [134 Pac. 361]; *Pacific
Portland Cement Co.* v. *Reinecke*, 30 Cal. App. 501, [158
Pac. 1041]; *Phillips* v. *Huffaker*, 35 Cal. App. 531, [170
Pac. 431]; *People* v. *Milner*, 122 Cal. 171, [54 Pac. 833];
*Osgood* v. *Los Angeles etc. Co.*, 137 Cal. 280, [92 Am. St.
Rep. 171, 70 Pac. 169]; *Sarraille* v. *Calmon*, 142 Cal. 651,

[76 Pac. 497]; *Collins* v. *Maude,* 144 Cal. 289, [77 Pac. 945]; *Cody* v. *Market St. Ry. Co.,* 148 Cal. 90, [82 Pac. 666]; *Bellus* v. *Peters,* 165 Cal. 112, [130 Pac. 1186]; *Lenninger* v. *Lenninger,* 167 Cal. 297, [139 Pac. 679]; *Hitchcock* v. *Rooney,* 171 Cal. 285, [152 Pac. 913]; *Pabst* v. *Shearer,* 172 Cal. 239, [156 Pac. 466].

Apt quotations might be made from all the foregoing decisions to the effect that a presumption is evidence; that it will produce a conflict with other evidence introduced to rebut it, and that it is for the trial court or jury to determine whether or not such evidence is sufficient to overcome the presumption.

We have been at pains to restate the doctrine and to cite the large number of decisions, because it is so earnestly contended by appellant that the rule is otherwise. In support of his contention he cites quite a number of cases, three of which we may briefly notice.

In *Potts* v. *Pardee,* 220 N. Y. 431, [116 N. E. 78], the court of appeals declare: "The automobile was owned by the defendant and this fact was *prima facie* evidence of her responsibility for the manner in which it was driven. (*Ferris* v. *Sterling,* 214 N. Y. 249, [Ann. Cas. 1916D, 1161, 108 N. E. 406]; *Kellogg* v. *Church Charity Foundation of L. I.* 203 N. Y. 191, [Ann. Cas. 1913A, 883, 38 L. R. A. (N. S.) 481, 96 N. E. 406].) The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely upon it." It is to be observed, though, in that case that the evidence in opposition to the presumption was offered by the plaintiff himself and, of course, he could hardly rely upon the presumption when he had vouched for the credibility of a witness who virtually testified that there was no place for the operation of such presumption.

We find a similar situation in the case of *Brown* v. *Chevrolet Motor Co. of California,* 39 Cal. App. 738, [179 Pac. 697], the court citing as authority the Potts case, *supra,* and another New York decision, *Matter of Carroll* v. *Knickerbocker Ice Co.,* 218 N. Y. 435, [Ann. Cas. 1918B, 540, 113 N. E. 507].

The more recent case is *Maupin* v. *Solomon, ante,* p. 323, [183 Pac. 198]. Therein, it seems to have been conceded by respondent, however, that the evidence against the presumption was "clear and convincing," and, therefore, it was just that he should not be allowed to urge the presumption. In support of the court's conclusion, quotation is made from *Savings and Loan Soc.* v. *Burnett,* 106 Cal. 514, [39 Pac. 922], as follows: "Presumptions are allowed to stand not against the facts they represent but in lieu of proof of facts, and when the fact is proven to the contrary to the presumption no conflict arises, but the presumption is simply overcome and dispelled." But the limitation of this principle is correctly prescribed by the supreme court in the later decision of *People* v. *Milner,* 122 Cal. 171, [54 Pac. 833], in an opinion written by the same justice. Therein it is said: "By section 2061, subdivision 2, of the Code of Civil Procedure, jurors are to be instructed 'that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds.' In this is a distinct recognition of the facts: 1. That a presumption is evidence; and, 2. That it is evidence which may outweigh the positive testimony of witnesses against it. It has been said that disputable presumptions are allowed to stand, not against the facts they represent, but in lieu of the proof of the facts, and that when the fact is proven contrary to the presumption no conflict arises, but the presumption is simply overcome and dispelled. (*Savings and Loan Soc.* v. *Burnett,* 106 Cal. 514, [39 Pac. 922].) This is true. Against a proved fact, or a fact admitted, a disputable presumption has no weight but where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proved; and, if not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption. In the Burnett case, *supra,* both parties testified to a state of facts contrary to the presumption. It was like an admission; it relieved the question from conflict." Such must be the rule if we are to give effect to the fundamental doctrine that clothes the jury with the authority to pass upon questions of fact. A case might arise, of course, where an

appellate court would be justified in setting aside a verdict upon the ground that a jury had accorded too much weight to a mere presumption, but, ordinarily, such error can only be corrected by the trial judge on motion for a new trial.

[9] Again, if the owner of an automobile lends his machine to another and on invitation becomes a passenger therein, in the absence of any agreement to the contrary, the owner has the right, and, indeed, it is his duty to prevent, if possible, the driver from operating the machine in a reckless and dangerous manner and in violation of law. He cannot sit idly by and refrain from remonstrance, at least, while knowing that the driver is thus endangering the lives of others. If he has the opportunity to restrain the driver and fails to take advantage of it, he should be held responsible for the consequences. This is the just view, and it is supported by the authorities. The general rule is stated in 28 Cyc. 38, as follows: "Where an injury is inflicted by the use or operation of a motor vehicle, upon the public highway the owner thereof is liable to respond in damages therefor, if the vehicle was being operated by such owner or was under his control . . . In all cases where the owner is present he will be responsible for injuries sustained by third persons unless the operator disobeys instructions as the owner is in law in control of the vehicle."

We have an illustration of the principle in *Crittenden* v. *Murphy*, 36 Cal. App. 803, [173 Pac. 595], wherein it is said: "The owner owes the duty to the traveling public to see to it that his car, when driven on the streets, with his permission and for the purposes for which the car was purchased, should be driven carefully and with due consideration to their rights; and the owner should not in good conscience be allowed to disclaim his responsibility on the ground that the use thus contemplated and authorized by him is permissive only."

Viewing the case in the light of the admitted facts, we must conclude that it was apparent to Triggs and to appellant that the situation was dangerous to the elder Randolph. They saw a man driving a cow followed by a buggy. At a considerable distance they were aware of the peculiar condition. They had abundant opportunity to observe the presence of the Randolphs and to bring the car under control and to pass them without injury to anyone. Under

the circumstances, both the driver and the owner were properly chargeable with responsibility for driving at a great rate of speed and without proper control of the motor into this perilous situation. It is not unreasonable to infer that if appellant had given proper direction to the driver, the accident would have been averted; and it is not unjust to hold the owner to this measure of responsibility.

We think the foregoing may be summed up in these propositions: 1. The question of the alleged agreement with Triggs was submitted to the jury; it was resolved against appellant on conflicting evidence, and this finding cannot be reviewed by this court. 2. Assuming the existence of the arrangement as claimed by appellant there was nothing therein whereby appellant surrendered the right to control the car while he was a passenger therein. 3. The law imposed upon him the duty not to allow the driver to operate the machine in violation of the statute, and 4. Under the circumstances it was his duty to direct and insist that the driver operate the machine with ordinary care and due regard to the safety of pedestrians.

Appellant attacks certain instructions given by the court, but we think the law was correctly given in the careful and comprehensive charge to the jury.

[10] One of these is as follows: "You are instructed that the defendant, Hunt, as the owner and occupant of this automobile, had the right to control the same, in the absence of some agreement or arrangement, express or implied, whereby he parted with such right of control at the time of the accident. Whether or not such an agreement or arrangement was made is a question of fact for the jury to determine. If you find from the evidence that the defendant, Hunt, had not parted with such right of control and that the deceased was killed as the result of the negligent operation of the car, as alleged in the complaint, your verdict must be for the plaintiffs." The principal criticism of the instruction is that it implies that the *right* of *control* rather than the *exercise* of *control* was the vital question. The instruction could not have been misleading, however, under the evidence. There was no showing that appellant did exercise or attempt to exercise any control over the driver. Hence his responsibility for the accident depended upon the question, after all, whether he had such right or

it was his duty to control or endeavor to control the operation of the machine. Of course, an instruction is sometimes abstractly erroneous and yet perfectly harmless when applied to the facts of the particular case.

We can see no valid objection to the following instruction: "You are instructed that it is admitted by the pleadings that the defendant, Hunt, was the owner and one of the occupants of the automobile at 'the time of the collision. This is *prima facie* proof that the driver was engaged in the owner's service and a presumption arises that the car was in use for the owner's benefit. Testimony that the automobile was loaned to Triggs does not, as a matter of law, destroy the presumption unless it is believed by you. The truth or falsity of this testimony is for you to determine. The jurors are the exclusive judges of the credibility of the witnesses and the weight of the testimony. Therefore, if you do not believe that the said automobile was loaned to said Triggs, or in his possession, as claimed by the defense, then I instruct you that if you find that the death of Randolph was the result of the negligent operation of the car, your verdict must be for the plaintiffs, unless you further believe that the deceased was guilty of contributory negligence." This instruction assuredly does not assume that the testimony as to the car being loaned to Triggs was untrue, but, according to the requirement of the law, it directed the jury to determine whether it was true or false. It must be so that a presumption is not destroyed by other evidence not believed by the jury, or else the presumption is not evidence at all.

Another instruction to the effect that appellant is not relieved from responsibility because he failed to exercise control of the machine, if he had such right, is criticised by appellant. But taken in connection with the other instructions and in view of the evidence, it cannot be considered erroneous. There is no ground for the contention that appellant did exercise control or that he did not have the opportunity of so doing. Indeed, appellant relied entirely upon the positions that the driver was not negligent, but that if he was, he was in complete control of the machine and appellant was not, therefore, liable, and, furthermore, that deceased was guilty of contributory negligence. Upon this particular issue, therefore, the only real question

was whether appellant had the right to control the operation of the machine.

[11] The following was given: "You are instructed that if the deceased was suddenly put in peril without having sufficient time to consider all the circumstances, he is excusable for omitting some precaution or making an unwise choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault. In such case, even if in bewilderment he runs directly into the very danger which he fears, he is not at fault." As an abstract proposition this is vindicated by the authorities. (*Braly* v. *Fresno City Ry. Co.*, 9 Cal. App. 417, [99 Pac. 400]; *Blackwell* v. *Renwick*, 21 Cal. App. 131, [131 Pac. 94]; *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, [66 Pac. 734]; *Raymond* v. *Hill*, 168 Cal. 475, [143 Pac. 748].)

There was evidence making the instruction pertinent, and being in the hypothetical form, it does not invite criticism.

Complaint is made that some of the instructions are irreconcilably conflicting. But we are satisfied that, when the whole charge is considered, there is no just reason for concluding that the jury was misled.

This instruction was given: "You are further instructed that the burden is upon plaintiffs to establish by a preponderance of the evidence that Triggs was a servant or employee of Mr. Hunt and acting within the scope of his employment—that is, doing the business for which he was employed, before Mr. Hunt can be liable. If the plaintiffs have failed to establish to your satisfaction as reasonable men, that Triggs was an employee of Mr. Hunt and acting on Mr. Hunt's business at the time of the accident, then your verdict must be for defendant." It might be contended with some plausibility that this instruction eliminated from the case the question of control by appellant by virtue of being the owner and occupant of the machine. Taken alone the instruction virtually told the jury that plaintiffs could not recover in any event unless they established the fact that Triggs was acting as the servant of appellant. As we have seen, there was the other theory, also, available to respondents. But appellant has not complained of this instruction, as, indeed, he could not, since it is more favorable

41 Cal. App.—48

to him than he was entitled to. However, the instruction was understood, no doubt, as referring simply to the question of responsibility of appellant by reason of the agency of Triggs.

When so many instructions are given upon various phases of negligence and addressed to all possible theories that can find support in the evidence, it is almost unavoidable that some uncertainty and some minor inconsistencies will appear. But, we think, there is no sufficient showing here to justify a reversal of the judgment. Indeed, we might assume that all the instructions were given at the request of appellant since nothing appears to the contrary. It is, at least, quite manifest that the larger part of them was given at his instance.

The judgment is affirmed.

Chipman, P. J. and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 21, 1919, and the following opinion then rendered thereon:

THE COURT.—In denying a rehearing in this case we deem it proper to say that we limit our approval of the opinion of the district court of appeal, on the question of the liability of the owner, to the first of the reasons assigned therein as cause for affirmance of the judgment, that is to say, the reason summarized therein as follows: "1. The question of the alleged agreement with Triggs was submitted to the jury; it was resolved against appellant on conflicting evidence, and this finding cannot be reviewed by this court."

As to the soundness of the other reasons set forth by the district court for the existence of such liability, we express no opinion.

The petition for rehearing is denied.

Shaw, J., Wilbur, J., Melvin, J., Lennon, J., Angellotti, C. J., and Olney, J., concurred.