[S. F. No. 9142.    In Bank.—June 11, 1920.]

## LYON & HOAG (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] PUBLIC UTILITY — ABANDONMENT OF PROPERTY TO PUBLIC — CONTINUED OPERATION AT LOSS—STATE WITHOUT POWER TO ORDER.—The state has no power to compel the continued operation of a public utility at a loss, where the owner of that utility is willing to and does in fact abandon to the public all its property that has been devoted to the public use.

[2] ID.—BASIS OF WANT OF STATE POWER—VIOLATION OF CONSTITUTION.—The basis of the conclusion that the state cannot compel the operation of a public utility at a loss is that such an order is a taking of property without compensation and therefore violates the fourteenth amendment of the federal constitution.

[3] ID.—RESUMPTION OF WATER SERVICE—ABANDONMENT OF PROPERTY TO PUBLIC—VOID ORDER OF RAILROAD COMMISSION.—An order of the railroad commission requiring a corporation which had subdivided a tract of land, sold lots therein, and furnished the purchasers with water for domestic purposes by means of its own pumping system to resume the water service after it had been discontinued upon the sale of all the lots, was beyond the power of the commission, where the corporation had wholly abandoned all its water-pipes and pumping plant to the public.

PROCEEDING in Certiorari to review an order of the Railroad Commission requiring re-establishment of water service.    Order annulled.

The facts are stated in the opinion of the court.

J. E. McCurdy and Walter H. Linforth for Petitioner.

Hugh Gordon, Douglas Brookman and Stoney, Rouleau, Stoney & Palmer for Respondents.

McCutchen, Willard, Mannon & Greene for Spring Valley Water Company on petition for rehearing.

WILBUR, J.—Petitioner seeks the review of an order of the Railroad Commission requiring it to re-establish its service of domestic water in a certain residence district of the city and county of San Francisco known as Lincoln

Manor.  Petitioner subdivided this tract, and, for the purpose of furnishing domestic water to the purchasers of lots therein, laid water-pipes in the streets thereof, purchased water from the Spring Valley Water Company, and, by means of a pumping system, distributed it to the purchasers of lots within the tract.  As fast as lots were sold and water connections desired for residences located thereon the same were made.  The same water rates were charged by the petitioner as by the Spring Valley Water Company.  As soon as all the lots in the tract were sold the petitioner discontinued said water service, and offered to give its water system free of charge to the Spring Valley Water Company for the purpose of a continuance of such service by the latter company.  Inasmuch as said service required an expenditure for pumping the water the latter company refused to accept the responsibility.  The lot owners appealed to the Railroad Commission for relief, and, upon the hearing of their petition, an order was made requiring the petitioner to resume such service.

Petitioner claims that it is not a public utility.  It also claims, if it is a public utility, that the control over it is vested in the board of supervisors of the city and county of San Francisco and not in the Railroad Commission. In view of our conclusion that the state has no power, either directly or through the board of supervisors of the city and county of San Francisco or the Railroad Commission of the state of California, to make the order in question, it is unnecessary to determine either of the foregoing points raised by the petitioner.  **[1]** The state has no power to compel the continued operation of a public utility at a loss, where the owner of that utility is willing to and does in fact abandon to the public all its property that has been devoted to the public use.  Since the submission of this case the supreme court of the United States has passed upon this question, and for that reason a discussion of the various decisions cited by the respondent in support of the order of the Railroad Commission is unnecessary.  That court decided that, "a carrier cannot be compelled to carry on even a branch of its business at a loss, much less the whole business of carriage." (*Brooks-Scanlon Company* v. *Railroad Commission of Louisiana,* 251 U. S. 396, [64 L. Ed. 323, 40 Sup. Ct. Rep. 183].)  A similar

conclusion was suggested by our earlier decision in *Fellows v. City of Los Angeles,* 151 Cal. 52, 64, [90 Pac. 127, 141], where it was said: "We do not mean to say that a corporation engaged in the distribution of water to public uses may not abandon its property and quit the business, without being subject to mandatory proceedings to compel it to continue to carry it on. It may find it impossible to go on. Its supply may become exhausted or be insufficient for paramount needs; the rates fixed by law may be too small to enable it to operate at a profit or without substantial loss; or it may conclude, without reason which the law would consider sufficient, that it will not continue. In case of a natural person it might become physically impossible. We do not intend to declare that in any such case mandatory process would be issued to compel the personal performance of the duty. These questions are not now involved and we express no opinion concerning them."

[2] The basis of the conclusion that the state cannot compel the operation of a public utility at a loss is that such an order is a taking of property without compensation and therefore violates the fourteenth amendment to the federal constitution. (*Brooks-Scanlon Co.* v. *Railroad Com., supra; North Pac. Ry. Co.* v. *North Dakota,* 236 U. S. 585, [Ann. Cas. 1916A, 1, L. R. A. 1917F, 1148, 59 L. Ed. 735, 35 Sup. Ct. Rep. 429, see, also, Rose's U. S. Notes]; *Norfolk & Western Ry. Co.* v. *West Virginia,* 236 U. S. 605, [59 L. Ed. 745, 35 Sup. Ct. Rep. 437].) The theory on which the state exercises control over a public utility is that the property so used is thereby dedicated to a public use. The dedication is qualified, however, in that the owner retains the right to receive a reasonable compensation for use of such property and for the service performed in the operation and maintenance thereof. Where, as in this case, the owner is willing to and does in fact abandon all the dedicated property to the public, there is no further basis upon which the regulatory power can be predicated. [3] To require the former owner, after such abandonment, to continue to operate the property at a loss for the benefit of the public would be a taking of such excessive cost of operation from such owner without compensation. The numerous cases cited by the respondent merely hold that a public corporation can be required to operate certain por-

tions of its system at a loss, where the general business of which such system forms a part can be profitably operated (*State ex rel. Caster* v. *Kansas Postal Telegraph-Cable Co.*, 96 Kan. 298, [150 Pac. 544] ; *State ex rel. Public Service Com.* v. *Missouri Southern R. R. Co.* (Mo.), 214 S. W. 381; *People ex rel. Hubbard* v. *Colorado Title & Trust Co.*, 65 Colo. 472, [178 Pac. 6].) No case has been cited in which it has been held that authority exists to compel a public utility to operate at a loss on its whole system and investment, and the foregoing decisions of the supreme court of the United States determine that it cannot be done. This, we understand, is fully conceded by the respondent Railroad Commission. It contends, however, that the petitioner should be compelled to continue the service for a reasonable time pending its application to the Railroad Commission for leave to abandon its service, or for increased rates to enable it to profitably continue such service. No such question was raised before the Railroad Commission. There the whole controversy was as to whether or not the petitioner was a public utility corporation and subject to the jurisdiction of the Railroad Commission. The commission found that petitioner had wholly abandoned its water-pipes and pumping plant August 10, 1918, and that thereafter the same had been operated and used by the Spring Valley Water Company at the request of the city officials of San Francisco and of the Railroad Commission. The order of the Railroad Commission under review was made June 10, 1919. We conclude that after such a complete abandonment to the public of all its property devoted to a public use the Railroad Commission is powerless to compel the petitioner to resume operations at a loss. The order of the Railroad Commission required the petitioner to resume service, without additional compensation and therefore at a continued loss.

The order under review is annulled.

Shaw, J., Lennon, J., Sloane, J., Lawlor, J., Angellotti, C. J., and Olney, J., concurred.

Rehearing denied.

Angellotti, C. J., Shaw, J., Lawlor, J., and Sloane, J., concurred.