[Civ. No. 3282. Fourth Dist. Nov. 9, 1944.]

EDITH J. GROVER, Appellant, v. SHARP AND FELLOWS CONTRACTING COMPANY (a Corporation) et al., Respondents.

Fred A. Wilson for Appellant.

Kenneth J. Murphy, Harry Parsons and Henry E. Kappler for Respondents.

MARKS, J.—This is an action by plaintiff to recover damages for the death of James M. Roe, her minor son, in a collision between a flat car and an automobile, owned by Roe, in which he was riding. The automobile was being driven by John Wolbert. The jury returned a verdict in favor of plaintiff and the trial court granted a motion for new trial on "the ground that the evidence is insufficient to justify the verdict." Plaintiff has appealed from this order.

It is thoroughly settled in California that a trial judge in passing on a motion for new trial is not bound by conflicts

in the evidence; that in effect he sits as a thirteenth juror with the duty resting on him of reviewing the evidence and passing on its sufficiency; that if he is dissatisfied with the verdict and concludes that it has resulted in a miscarriage of justice it becomes his duty to grant the motion. (*Olinger* v. *Pacific Greyhound Lines,* 7 Cal.App.2d 484 [46 P.2d 774].)

It is very generally held that where there is a material conflict in the evidence so that a verdict for the moving party, if returned, would have had evidentiary support the order granting the new trial will not be disturbed on appeal. (*Dempsey* v. *Market Street Ry. Co.,* 23 Cal.2d 110 [142 P.2d 929]; *Moss* v. *Stubbs,* 111 Cal.App. 359 [295 P. 572, 296 P. 86]; *Myers* v. *Moose,* 36 Cal.App.2d 739 [98 P.2d 551]; *Anderson* v. *Lang,* 42 Cal.App.2d 725 [109 P.2d 981].)

It is also very generally held that where the plaintiff has recovered a judgment and the trial court grants defendant's motion for new trial because of the insufficiency of the evidence the order will not be disturbed on appeal if the evidence would sustain the finding of contributory negligence as a matter of fact on the part of the injured party. (*Theren* v. *Hodorowicz,* 17 Cal.App.2d 653 [62 P.2d 749]; *Henderson* v. *Braden,* 35 Cal.App.2d 88 [94 P.2d 625].) Thus we may confine our discussion of the case to a consideration of the question of the sufficiency of the evidence to sustain a finding of contributory negligence of the driver of the automobile, if any, and its being imputed to the minor son of plaintiff who was killed in the collision, had a finding of such imputed contributory negligence been made. In so doing we need only detail such of the evidence as points to contributory negligence, disregarding the sharp conflicts in the evidence that a study of the record discloses.

The accident happened at about 8 p. m. on December 21, 1942, at the intersection of Highway 91 with the tracks of the Tonopah and Tidewater Railroad Company near Baker, on the desert in San Bernardino County. The roadway was dry and the night was clear and cold with the moon shining.

Highway 91 runs in a general easterly and westerly direction on both sides of the place of the accident. At the time of the accident it was crossed by the railroad tracks which ran in a general northeasterly and southwesterly direction. The angle between the highway and the tracks is variously estimated at between 30 and 45 degrees.

The railroad had not been in service as a common carrier for several years. The government had requisitioned its trackage under the war powers and Sharp and Fellows Contracting Company, herein called the contractor, had been given the contract for removing the rails. It had removed the rails from the northern end of the line to about eight miles north of Baker from which point it was working southerly using the remaining tracks to their junction with the Union Pacific Railroad Company a number of miles southerly from Baker. The contractor had rented an old engine, tender, several flat cars and probably a derrick car from the Tonopah and Tidewater Railroad Company for use in its removal of the rails and their transportation to the Union Pacific line. There was one switch about 100 feet north, and another about 200 feet north of the highway crossing. Both were on the east side of the main line tracks.

On the evening of the accident the train had been made up for its trip southerly. It consisted of a tender, an engine, two or more empty flat cars, two loaded flat cars and the derrick car. The engine, at the southerly end of the train, was in reverse so that the rays of its headlight were projected northeasterly and shone over the rest of the train. They should have been easily visible to a motorist approaching from the east.

At least one employee of the contractor had been stationed in the highway to flag down motor traffic with an electric lantern during the switching operations. Just before the train started southerly across the highway he left that position and went near the first switch so he could transmit signals.

East from the crossing there were various signs on and along the highway warning motorists of their approach to it. About 20 feet east of the crossing two broad white lines were painted across the highway and the usual cross-arm signal was on the north edge of the highway. Sixty or more feet to the east there was a reflector railroad crossing sign on the north edge of the road. About 300 feet east of the crossing two broad white lines were painted across the north half of the pavement with two large white ''X's'' painted between the lines.

The employee of Sharp and Fellows Contracting Company who had been in the highway to warn traffic testified that when the train was made up he left that post and went to a point near the first switch so he could transmit signals; that when

he was about 40 feet north of the highway he saw the automobile involved in the collision when it was several hundred feet east of the crossing; that its headlights were illuminated; that at about that time the engine started to move south across the highway at a speed of three or four miles per hour; that before it started the engineer gave three blasts on the whistle and the usual crossing signal with the whistle; that the headlight on the engine was burning and was shining in a northeasterly direction over the train; that during the entire time between the start of the train and the collision the engine bell was being rung; that when the engine had just cleared the highway one of the empty flat cars was across it.

He further testified that he observed the automobile approach the crossing; that its speed was between 30 and 40 miles an hour which was not reduced; that when the automobile was about 100 feet east of the crossing he realized the danger of a collision as its speed had not been reduced; that he was then about 40 feet north of the highway; that he waved his lantern, called out a warning and started running towards the highway waving his lantern; that the automobile continued on its course without reducing its speed and crashed into the middle of one of the empty flat cars. There were no tire marks of any kind observable on the pavement.

The automobile which ran into the flat car was owned by James M. Roe, the deceased son of plaintiff, and was being driven by John Wolbert. Plaintiff testified that the deceased, her son, had been working in Salt Lake City prior to the accident. There is no evidence as to the purpose of the journey being made by the two young men other than a statement by counsel during the trial that, ''Two boys, one named James M. Roe and the other by the name of Wolbert were coming home from school in Utah to spend the Christmas holidays with their parents who live in Los Angeles County.'' We regard this statement sufficient to establish the purpose of the trip and the relationship between the youths at the time of the accident.

The evidence we have outlined is sufficient to support the conclusion of the trial judge, if drawn, that Wolbert was not keeping a sufficiently vigilant watch for obstructions on the highway in front of him and did not observe, or at least did not pay sufficient attention to the various warnings of danger which we have mentioned. This is sufficient to support a finding of contributory negligence on his part under the au-

thorities already cited and if that negligence can be imputed to Roe, the order granting a new trial must be affirmed. Because some of the evidence we have outlined is sharply contradicted does not furnish sufficient ground for reversing the order.

We do not find it necessary to consider the question of any negligence on the part of defendants because the facts bearing on contributory negligence are sufficient to support the order, regardless of the negligence, if any, of defendants. While Wolbert might not have been shown to have been guilty of contributory negligence as a matter of law, the finding of contributory negligence as a matter of fact, if made, would have had evidentiary support.

We now come to the question of whether or not the contributory negligence of Wolbert, if found by the trial court, may be imputed to James M. Roe so as to defeat plaintiff's recovery in this action. We conclude that if it may be so imputed the order must be affirmed. It may be so imputed for two principal reasons.

First, under the admission of counsel we must conclude that the two young men were making the trip for the common purpose of returning from Utah to their respective homes in Los Angeles County. The reasonable inference follows that Wolbert was driving at the time of the accident with the consent of Roe, the owner of the car, who was riding on the seat beside Wolbert. Under the provisions of section 402 of the Vehicle Code the negligence of a person who is driving a motor vehicle with the consent of the owner is imputed to the owner. (*Milgate* v. *Wraith*, 19 Cal.2d 297 [121 P.2d 10]; *Fox* v. *Schuster*, 50 Cal.App.2d 362 [123 P.2d 56].)

Second, it is generally held that where the owner of a motor vehicle permits another to drive it, and the owner is a passenger in the car being so operated, an inference arises that the driver is operating the vehicle for the benefit of the owner and as his agent. (*Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]; *Randolph* v. *Hunt*, 41 Cal.App. 739 [183 P. 358]; *Bosse* v. *Marye*, 80 Cal.App. 109 [250 P. 693]; *Maberto* v. *Wolfe*, 106 Cal.App. 202 [289 P. 218].)

It has also been held that where the owner of a motor vehicle has loaned it to another, and becomes a passenger in it, the duty rests upon the owner to prevent, if possible, the

operation of the vehicle in a reckless and negligent manner; that the owner cannot sit idly by and refrain from remonstrance. (*Randolph* v. *Hunt, supra.*) If this rule be applied here primary negligence might attach to Roe if Wolbert be held negligent in the operation of the car as there is nothing to indicate that Roe remonstrated with Wolbert or was unaware of this negligence.

Thus, aside from primary negligence and the admission of the common purpose of the trip, we have here the negligence of Wolbert, if found, and the inference of agency under which that negligence might be imputed to Roe. ■ As said in *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868]: "An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. . . . If a jury can reasonably infer from these primary facts that the material facts exist, the party has introduced sufficient evidence to entitle him to have the jury decide the issue." In other words, if such an inference may be drawn, a question of fact is presented for decision by the trier of fact, which is the trial judge, in ruling on a motion for new trial.

■ Thus there was evidence before the trial court which would have supported a judgment for defendants on the ground of contributory negligence. Under such circumstances the order of the trial judge granting a motion for new trial because of insufficiency of the evidence may not be disturbed.

■ Plaintiff argues the insufficiency of defendants' pleadings to raise the question of joint enterprise and imputed contributory negligence. The pleadings are not models of excellence but no demurrer was interposed. Had plaintiff desired more specific allegations she should have raised the question in the trial court. We regard the pleadings as sufficient under the circumstances here presented.

The order is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1945.