[Civ. No. 15088.   Second Dist., Div. Three.   May 23, 1946.]

WAYNE HAYS et al., Respondents, v. SERVICE TANK
LINES, INC., et al., Appellants.

Reginald I. Bauder for Appellants.

Carroll M. Counts and Henry E. Kappler for Respondents.

WOOD, J.—This is an action against defendants, Service Tank Lines, Inc., Howard R. Stonebraker, and Roy Richard Marley, for damages sustained as the result of an automobile collision.   Trial was by jury, and the verdict was in favor of plaintiffs against Marley, and was in favor of defendants Ser-

vice Tank Lines and Stonebraker. The trial court granted plaintiffs' motion for a new trial as to Service Tank Lines and Stonebraker on the ground that the verdict and the judgment entered thereon were not supported by the evidence. Said last mentioned defendants appeal from the order granting the motion for a new trial.

The collision occurred on Sunday, February 13, 1944, about 3 p. m., at the intersection of Rosemead Boulevard and Anaheim Road in Los Angeles County. Each highway is 76 feet wide, paved and marked for two traffic lanes in each direction. Mechanical traffic signals, consisting of red, yellow, and green lights, were in operation on each corner of the right-angle intersection. It was a clear day. There was a one-story building on the northeast corner, and service stations on the other three corners.

Previous to the accident, defendant Marley had been proceeding in his automobile in a westerly direction on Anaheim Road. He observed that the signal for traffic on Anaheim Road was red, and he stopped in the outside lane for westbound traffic, about 5 feet east of the east entrance to the intersection. Another automobile stopped at the east entrance to the intersection, in the inside lane for westbound traffic, to the left of and about 5 feet ahead of Marley.

Plaintiffs, husband and wife, had been proceeding in their automobile in a southerly direction on Rosemead Boulevard, and they stopped in the inside lane for southbound traffic, behind a Chevrolet truck which was stopped in the same lane, a few feet from the intersection, to await the green signal for traffic to proceed on Rosemead Boulevard. Another automobile stopped in the inside lane for southbound traffic, behind plaintiffs' automobile, and another automobile stopped in the same lane behind that automobile. There was evidence that other southbound automobiles were stopped at the right of the southbound automobiles just mentioned. Another automobile stopped in the outside lane for southbound traffic, near the curb and a few feet north of the entrance to the intersection. At the time of the accident these southbound automobiles were stopped in the position just described.

Defendant Stonebraker, who was operating a Deisel tank truck and trailer, owned by defendant Service Tank Lines, was proceeding in a northerly direction on Rosemead Boulevard. The truck and trailer will be referred to as the truck. The 20-wheel truck was approximately 60 feet in length, was

loaded with 5,200 gallons of fuel oil, and, including the oil, weighed about 38 tons. As Stonebraker was approaching the intersection, about 200 or 300 feet south thereof, he observed that the signal for traffic on Rosemead Boulevard was green. The evidence is conflicting as to whether the signal for traffic on Rosemead Boulevard, at the time he entered the intersection, was yellow or red, and also is conflicting as to the rate of his speed when he entered the intersection. About this time defendant Marley (who, as stated above, had stopped east of the intersection) proceeded in a westerly direction into the intersection. Stonebraker continued in a straight course through the intersection until he was about 15 feet from Marley's automobile, and then he swerved to the left but a portion of his truck collided with the front left fender and front bumper of the Marley automobile, which automobile was at that time approximately 20 feet west of the east entrance to the intersection. The truck then traveled in a northwesterly direction into the lanes for southbound traffic on Rosemead Boulevard. There it collided with the Chevrolet truck, plaintiffs' automobile, the automobile behind plaintiffs' automobile, and the automobile in the outside traffic lane next to the curb. It continued to travel in a northwesterly direction and went into the lot or driveway of the service station on the northwest corner of the intersection, carrying with it the Chevrolet truck and the automobile which had been in the outside lane next to the curb, the automobile at that time being on its side against the front end of the truck and the Chevrolet truck being on top of the automobile.

The issue on appeal is whether the trial court abused its discretion in granting plaintiffs' motion for a new trial on the ground that the evidence was insufficient to sustain the verdict.

Marley testified that the signal for traffic on Anaheim Road was green when he started his automobile into the intersection; that the automobile, which was stopped to his left, obstructed his view of northbound traffic on Rosemead Boulevard; that he moved ahead of said automobile, then glanced to his left to observe northbound traffic, saw the truck proceeding into the intersection, and stopped his automobile to permit the truck to go around him; that the truck was traveling at a speed of approximately 30 miles an hour, and that the speed was not decreased.

The owner of the automobile which was next to the curb

testified that at the time the truck swerved in front of Marley's automobile the signal for traffic on Rosemead Boulevard was red; and that his (the witness') automobile was demolished. He also testified that he first saw the truck when it was approximately 600 feet south of the intersection, at which time the signal for traffic on Rosemead Boulevard was red.

The driver of the automobile, which was behind plaintiffs' automobile, testified that when he stopped behind plaintiffs the signal for traffic on Rosemead was "stop"; that he "just waited there," and before the collision another automobile came to a stop behind his automobile; that he first saw the truck in the middle of the intersection before it swerved, and it was traveling between 30 and 35 miles an hour; and that it cost $250 to repair his automobile.

Another witness testified that at the time of the accident he was stopped at the west entrance to the intersection on Anaheim Road; that he had his eyes "glued" on the signal on the northeast corner, and saw it change from red to green; and that after it changed to green he observed Marley's automobile start into the intersection.

Plaintiff Mrs. Hays testified that she saw the truck approaching the intersection, and it was next to the curb—"kind of hugging the curb"; and at that time two automobiles were stopped side by side in the northbound traffic lanes south of the intersection.

Stonebraker testified that he was 200 or 300 feet from the intersection when he first looked at the traffic signal on Rosemead Boulevard; that it was green at that time; that he did not see it change from red to green—he "did not pay any attention"; that he did not know how long it had been green when he first saw it, and he knew it might turn to "amber" at any second; that his speed at that time "could have been" 25 to 30 miles an hour, that when he was about 100 feet from the intersection, he slowed down to "around 25" miles an hour, but at no time did he apply his brakes; that he knew as he approached the intersection, at the speed he was traveling, he would have to take emergency measures to stop if the signal changed from green to another color; that the signal changed to "amber" when he was "around 20 to 40 feet south of the intersection," at which time he was still traveling at the approximate speed of 25 miles an hour, and he made no further observation of signals before entering the intersection; that as he entered the intersection, he observed de-

fendant Marley's automobile "starting out" from Anaheim Road; that he formed no opinion of Marley's speed but it was slow—probably 5 miles an hour; that after he observed Marley's automobile he continued into the intersection at a speed of approximately 25 miles an hour, and did not apply his brakes until "just before" he collided with Marley's automobile; that he applied the foot brakes, which control the truck only, but he did not apply the air brakes, which control the trailer, because they are operated by a hand throttle and he had his hands "too full of steering wheel" and did not have time to apply the hand brakes; that he traveled about 20 feet after he saw the Marley automobile before he swerved; and that the Marley automobile was in motion at the time of the collision. He testified further that when he entered the intersection he was looking straight north in his lane of traffic; that he did not pay any attention to automobiles approaching from the north, nor to any automobiles standing at the west entrance to the intersection, and he did not remember seeing any automobiles stopped south of the intersection; that when the yellow light came on he was not far enough from the intersection to stop without obstructing traffic on Anaheim Road; and that he was traveling "about the width of the car from the center line" of Rosemead Boulevard. He also testified that he was "probably" 10 or 12 feet from the east curb of Rosemead Boulevard. He testified further that at a speed of 25 miles an hour, with the load he was carrying, it would take "around 60 feet" to stop the truck, and at a speed of 30 miles an hour it would take "probably 70 feet" to stop, using both the brakes on the truck and the brakes on the trailer—that it "would probably take 100 feet" to stop under the same conditions using only the foot brakes on the truck; that in coming to a stop, the trailer brakes are applied first to avoid "jackknifing," because the trailer whips around to the side if the speed of the truck is decreased before that of the trailer.

Appellants contend that the evidence was insufficient as a matter of law to support a verdict in favor of plaintiffs. They argue that there was no substantial conflict in the evidence, and that the evidence failed to disclose any negligence on the part of Stonebraker.  In ruling upon a motion for a new trial, a trial judge must review the evidence and pass upon its sufficiency, and if he concludes that the verdict has resulted in a miscarriage of justice it is his duty to grant the

motion for a new trial. (*Grover* v. *Sharp & Fellows etc. Co.*, 66 Cal.App.2d 736, 737 [153 P.2d 83].) ▮▮ There was a substantial conflict in the evidence in the present case as to material issues, for example: as to whether the signal for traffic on Rosemead was red or yellow when Stonebraker entered the intersection; as to his rate of speed; as to his position on the highway in relation to the east curbing; as to whether he decreased his speed at any time; and as to whether Marley stopped his automobile in the intersection before the collision. The testimony of four witnesses, as above referred to, would support a finding that the signal for traffic on Rosemead was red when Stonebraker entered the intersection. The evidence, considering the type, size and weight of the truck and trailer, the flammable character of the load, and the numerous vehicles at the intersection, would support a finding that he did not drive cautiously into or through the intersection, even if he entered the intersection when the signal was yellow. Section 476 of the Vehicle Code then in effect provided that when traffic is controlled by colored light signals, the yellow light shall indicate that "Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection or at a marked line, but if such stop can not be made in safety a vehicle may be driven *cautiously* through the intersection or past such signal." (Italics added.) Although Stonebraker knew, according to his testimony, that the green light, which he said he observed a few hundred feet before he arrived at the intersection, might change to yellow at any second, and that he would have to use emergency measures in order to stop without jackknifing the truck and trailer, or to stop at all, he continued to approach the intersection at a speed which would not enable him to stop before he entered the intersection as required in said section 476.

His negligence is also indicated by the distance he traveled, and the collisions which occurred, after colliding with the Marley automobile. He continued across the intersection, then went on the wrong side of the highway, struck several stopped automobiles with great force, throwing one of them on top of another and then dragging those two automobiles into a service station.

▮▮ Where the evidence is in substantial conflict, and a verdict for the moving party would have been supported by the evidence, an order granting a new trial on the ground of insufficiency of the evidence will not be disturbed on appeal.

(*Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 113 [142 P.2d 929].) There was no abuse of discretion on the part of the trial court in granting the motion for a new trial.

The order is affirmed.

Desmond, P. J., and Shinn, J., concurred.