[Civ. No. 3441.    Fourth Dist.    Nov. 21, 1947.]

EDITH J. GROVER, Appellant, v. SHARP AND FEL-
LOWS CONTRACTING COMPANY (a Corporation) et
al., Respondents.

Fred A. Wilson for Appellant.

Kenneth J. Murphy, Harry E. Kappler and Harry H. Parsons for Respondents.

MARKS, J.—This is an appeal from a judgment founded on a verdict for defendants in an action brought by plaintiff, the mother of James M. Roe, to recover damages for his death in a collision between an automobile owned by him in which he was riding, with John Wolbert as driver, and an empty flat car being operated by the employees of Sharp and Fellows Contracting Company. The accident happened at about 8 p. m. on December 21, 1942.

The cause has been here before (*Grover* v. *Sharp and Fellows Contracting Co.,* 66 Cal.App.2d 736 [153 P.2d 83].) At the first trial the jury returned a verdict in favor of plaintiff and the trial judge granted a motion for new trial, specifying in the order that "the evidence is insufficient to justify the verdict." The order was affirmed on the ground that the evidence justified the conclusion that John Wolbert, the driver of the car, was guilty of negligence that proximately contributed to the accident and to the death of James M. Roe, which negligence was imputable to Roe. The Supreme Court denied a petition for hearing.

The opinion on the earlier appeal contains a detailed and rather lengthy statement of the facts established at the first

trial. With minor exceptions the same facts were established at the second trial so there should be no necessity of repeating them here. We will confine ourselves to pointing out the two material particulars in which the facts at the second trial varied from those at the first.

At the first trial the evidence indicated that the Tonopah & Tidewater Railroad Company, Limited, had not operated as a common carrier over the tracks involved here for several years prior to the accident. The only thing bearing on that question in the record now before us is a stipulation of counsel, as follows:

"MR. WILSON: Also stipulated that the railroad tracks and railroad equipment and the right-of-way on which the same were located were owned by the Tonopah & Tidewater Railroad Company, Ltd., subject to the right of the United States Government by virtue of requisition thereof. MR. PARSONS: Which requisition was exercised by the Government. MR. WILSON: That is right. MR. MURPHY: So stipulated. MR. WILSON: And finally, that Tonopah & Tidewater Railroad Company, Ltd. had ceased to use the railroad right-of-way and the railroad equipment as a railroad prior to July 1942."

There is nothing in the record to indicate exactly when the requisition by the government occurred, and there is no stipulation that the railroad had been abandoned.

At the first trial counsel stated that Wolbert and Roe, at the time of the accident, were coming home from school in Utah to spend the Christmas holidays with their parents who lived in Los Angeles. There is nothing in the present record bearing on that subject.

Plaintiff seeks a reversal of the judgment against her on the ground of instructions requested by defendants and given to the jury which she now claims were prejudicially erroneous. She predicates this argument chiefly on the theory that the railroad had abandoned its operations, its trackage and right-of-way and so was not entitled to the protection which the law and, as she argues, the instructions gave a common carrier in propelling its equipment across a public highway upon which the two young men were traveling. She argues that when the work train crossed the highway it blocked it without right and created a public nuisance, citing section 3479 of the Civil Code; *California & Nevada Railroad Co.* v. *Mecartney,* 104 Cal. 616 [38 P. 448]; and *Slater* v. *Shell Oil Co.,* 39 Cal.App. 2d 535 [103 P.2d 1043].

■ Speaking generally, a public utility is required to continue its services until it has been granted permission by the Railroad Commission to discontinue them. (22 Cal.Jur. p. 54, § 44.) However, this rule is not absolute. (*Lyon & Hoag* v. *Railroad Com.*, 183 Cal. 145 [190 P. 795, 11 A.L.R. 249].)

■ We have been cited to no order of the Railroad Commission permitting the Tonopah & Tidewater Railroad Company, Limited, to abandon any portion of its services. We have found nothing in the record bearing on the question of abandonment other than the stipulation already quoted, which did not recite that there had been an abandonment of the railway but merely that there had been a nonuser by the railroad company for a period of about six months prior to the accident. That there had been use of the tracks by work trains within that time and up to the very moment of the accident is clear. The federal government, in the exercise of its war powers, had requisitioned the property and had taken possession of it through its contractor, Sharp and Fellows Contracting Company, which was operating its work trains over the usable portion of the right-of-way in carrying out government orders. This suggests that the railroad might be abandoned, rather than that it had been abandoned,—a future, rather than a past event.

In *People* v. *Southern Pacific Co.*, 172 Cal. 692, at pages 700-701 [158 P. 177], it was said:

"From the facts above stated it is clear that the finding of the court below that the defendants had abandoned the strips of land in controversy has no support in the evidence except that which it may derive from the fact that there was a nonuse of the 1,000 foot strip for the nine years from 1894 to 1903 and a nonuse of the other branch from 1888 until the beginning of the action. It is the theory of the plaintiff that nonuse of such a franchise for these periods is sufficient evidence of both the fact of abandonment and the intention to abandon. The court below evidently made its finding upon this theory. In this we think it was in error.

"The rule upon this subject is thus stated: 'As a general rule, in order to constitute an abandonment of an easement in a right of way by a railroad company there must be a nonuser accompanied by unequivocal and decisive acts on the part of the company, clearly showing an intention to abandon. . . . In the absence of a statute, mere nonuser for any length of time will not work an abandonment.' (33 Cyc. 222; see, also, 1 Corpus Juris, 8.) . . . In *Moon* v. *Rollins* (36 Cal. 338)

in defining abandonment, the court said: 'It is a question of intention and has been so held over and over again, and *not* a question of *time*, except so far as the jury are entitled to consider lapse of time in connection with other circumstances of claim, or nonclaim, and acts of ownership and dominion, or a want of such acts, for the purpose of ascertaining the intention.' In *Lawrence* v. *Fulton* (19 Cal. 683) an instruction which declared 'that lapse of time does not constitute an abandonment' was approved, and it was added that, in deciding the question of abandonment, lapse of time was not, to speak with exactness, *the* material element, but only '*a* material element to be considered.' "

In *Jones* v. *Southern Ry. Co.*, 285 F. 19, it was said:

"Where the operation of a railroad has been permanently stopped under conditions like those in the present case, there is no presumption of a purpose to abandon the rails and fastenings thereon, and a purpose to abandon the roadbed evidences no purpose to abandon such rails to the owners of the fee."

Thereafter, the court proceeded to quote with approval from *Georgia Railroad & Banking Co.* v. *Haas*, 127 Ga. 187 [56 S.E. 313, 119 Am.St.Rep. 327, 9 Ann.Cas. 677], as follows:

" 'In the case now before us there is no evidence of any intention on the part of the purchaser to abandon to the landowners the rails and fastenings, and the doctrine of the abandonment of trade fixtures has no application. There may have been an intention to take up the rails and then abandon the land, but the effort to remove the rails directly negatives any intention to abandon them.' "

As the evidence fails to show an abandonment by the Tonopah & Tidewater Railroad Company, Limited, up to the time the government took possession under its war powers, and as thereafter trains were operated over the tracks under authority and by direction of the government, the argument that there had been an abandonment of the railroad as well as the argument that the passing of trains over the tracks which crossed the highway constituted an unlawful obstruction to traffic amounting to a nuisance, finds little support in the record.

Plaintiff argues that defendants' instruction number 39, which admittedly set forth the usual reciprocal rights and obligations of motorists and of trains passing through sparsely populated areas, violates the provisions of section

553 of the Vehicle Code which defines the duties of the driver of a vehicle about to enter or cross a public highway from an alley not more than 16 feet wide or from a private road or driveway. This argument is based on the theory of abandonment of the railroad which we have already disposed of. It might not be out of place to further observe that section 31 of the Vehicle Code defines the word "vehicle" and provides that it does not include "a device . . . used exclusively upon stationary rails or tracks," so section 553 of that code can have no application here. Plaintiff's attack on several other instructions is also grounded on the theory of abandonment so they need no further notice.

■ Plaintiff also complains of defendants' instruction number 37 on the ground that it omitted the necessary element of the negligence of Wolbert, the driver, being imputed to Roe, the owner of the car. The question of the imputed negligence was covered by another instruction, although it might well have been included in the one under discussion.

Under the facts of this case it seems very improbable that the jury could have been misled by the omission of this element from this instruction when it was well covered in others.

In the former decision of this case (66 Cal.App.2d 736 [153 P.2d 83]), at page 741, it was said:

"Second, it is generally held that where the owner of a motor vehicle permits another to drive it, and the owner is a passenger in the car being so operated, an inference arises that the driver is operating the vehicle for the benefit of the owner and as his agent. (*Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]; *Randolph* v. *Hunt,* 41 Cal.App. 739 [183 P. 358]; *Bosse* v. *Marye,* 80 Cal.App. 109 [250 P. 693]; *Maberto* v. *Wolfe,* 106 Cal.App. 202 [289 P. 218].)"

■ The errors in defendants' instruction number 43, of which plaintiff complains, are more serious. It is in the form of a formula instruction which omits the questions of (1) imputing the negligence of Wolbert to Roe and (2) that the negligence of Wolbert, if any, must have been a proximately contributing cause of the collision. While these elements were erroneously omitted from this instruction they were properly included in several others.

In *Dawson* v. *Boyd,* 61 Cal.App.2d 471 [143 P.2d 373], it was said:

"The rigid rules formerly applicable to formula instructions have been greatly modified in recent years. Where the omitted element is fully, fairly and correctly covered by other

instructions, and where, from a reading of the instructions as a whole, it is obvious that the jury was not misled, the failure to include one element in a formula instruction is not prejudicial. (Citing cases.) That is exactly the situation in the instant case." *Dodds* v. *Stellar*, 77 Cal.App.2d 411 [175 P.2d 607], is to the same effect.

The evidence of the contributory negligence of Wolbert is strong. That his negligence should have been imputed to Roe seems clear. Under these circumstances, there being no miscarriage of justice, we are prohibited from reversing the judgment. (Const., art. VI, § 4½.)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 19, 1948. Carter, J., voted for a hearing.