**JOHNSTON TESTERS, Inc., et al.,**
Appellants,

v.

**Velma Gene TAYLOR, Individually and as Next Friend of Mark Stephen Taylor, a Minor, Appellee.**

No. 13245.

Court of Civil Appeals of Texas.
San Antonio.
Jan. 8, 1958.

Rehearing Denied Jan. 29, 1958.

Edward P. Fahey, Carl Wright Johnson, Nat L. Hardy, San Antonio, R. E. Schneider, Jr., George West, Harvey L. Hardy, Charles W. Barrow, San Antonio, Keys, Russell, Keys & Watson, Corpus Christi, Harry J. Schulz, Three Rivers, for appellants.

Adrian A. Spears, Franklin S. Spears, San Antonio, for appellee.

## W. O. MURRAY, Chief Justice.

This suit was instituted by Velma Gene Taylor, for her own benefit and the benefit of her minor son, Mark Stephen Taylor, against Johnston Testers, Inc., Charlie Rhodes, a resident of Louisiana, McDowell & Cook of Texas, Inc., McDowell & Cook of Louisiana, Inc., and A. L. and W. Moore, residents of Louisiana and doing business in that State as partners under the firm name of A. L. & W. Moore, seeking to recover damages because of the death of James Doran Taylor, her husband and the father of her son, in an automobile accident which occurred in Live Oak County on November 14, 1954.

It was alleged that all of the defendants were legally liable for the operation of a Dodge pick-up truck which collided with the Taylor automobile, and which was being driven at the time of the collision by defendant Charlie Rhodes.

The cause was tried to a jury and, based upon the jury's answers to the questions submitted, judgment was rendered against all of the defendants in favor of Mrs. Taylor in the sum of $7,000 for the death of her husband, in the sum of $750 for damage to the automobile, and in favor of Mark Stephen Taylor, her minor son, in the sum of $12,000 for loss of his father, from which judgment all of the defendants have appealed.

The collision occurred upon a public highway between Beeville and George West, Texas. The pick-up truck was being driven by Charlie Rhodes and the Taylor automobile was driven by Louis Wade McCumber, known as "Bud" McCumber, and the deceased, James Doran Taylor, known as Jim Taylor, was seated on his right. Both vehicles were going in the same direction, in that both were proceeding in the direction to George West. The Taylor automobile, which was a Ford, struck the left rear of the pick-up truck. Jim Taylor was killed and Bud McCumber, knocked unconscious and severely injured.

Appellants' first six points raise the contention that Jim Taylor, being the owner of and seated in the Ford at the time of the accident, in the absence of proof to the contrary, would be presumed to be in control of the Ford, and that the driver, Bud McCumber, was his agent. The jury found that Bud McCumber, the driver of the Ford, was guilty of contributory negligence. Appellants contend that under the facts and circumstances the contributory negligence should be imputed to Jim Taylor and, therefore, there should have been no recovery by appellees.

We sustain this contention. Jim Taylor was instantly killed and, of course, did not live to give any explanation as to how the collision occurred or under what arrangement McCumber was driving Taylor's automobile. Bud McCumber testified at the trial but had no recollection concerning the collision, or even that he was driving. The last McCumber could remember, Jim Taylor was driving his own automobile.

On the night of the accident, Jim Taylor and Bud McCumber left McCumber's house

at Dinero, Texas, about 7 P.M., riding in Jim Taylor's Ford automobile, for the purpose of attending a public dance at Beeville, Texas. They did attend the dance, leaving about 1:00 A.M. and going to the Manhattan Cafe in Beeville, where they had something to eat and then got into the Ford for the purpose of returning to McCumber's home at Dinero to spend the night. They took Highway 202 out of Beeville, and traveled some twenty miles along this highway when they struck the rear end of the pick-up truck and were injured, as above stated. They had passed two roads that would have taken them to Dinero, and were headed on into George West when the collision occurred. To go to Dinero through George West would have been twenty miles out of their way. Why they were headed toward George West is not explained in any way. The jury found both the driver of the truck and the driver of the Ford to be guilty of negligence.

"Bud" McCumber brought a separate suit for his damages against appellants, and his suit was consolidated with this case for the purpose of trial. McCumber was denied any recovery, but the widow and minor son of Jim Taylor were permitted to recover as above stated.

Under all the circumstances, the law will presume that Jim Taylor was in full control of his automobile and that Bud McCumber was driving it under Taylor's direction and as his agent. This is a rebuttable presumption which may be overcome by evidence to the contrary, but we have searched the record and find no evidence that would show that Jim Taylor had relinquished the control of his automobile to Bud McCumber. There is some evidence that Jim Taylor had taken off his shoes and was in his sock feet at the time he was killed, and appellee contends that this shows that Jim Taylor had gone to sleep and had, therefore, relinquished control of the driving of his automobile. The point is not whether Taylor was actively exercising control over his car at the time of the accident, but whether or not he had such authority.

We find no Texas cases that are directly in point, but there are cases from other States that are in point. Riggs v. F. Strauss & Son, La.App., 2 So.2d 501, 504 is a case on all fours. There Miss Winnifred Riggs, accompanied by James L. Baur, drove her Chevrolet automobile from Monroe, Louisiana, to Rayville, Louisiana, a distance of approximately twenty-five miles, where the couple enjoyed dancing for several hours and then commenced the return journey. On departing from Rayville, Miss Riggs was driving, but after traveling two or three miles she became sleepy and requested her escort to drive and the exchange was accomplished, and she, while sitting on the front seat beside the driver, placed her head against the door and fell asleep. The driver crashed into a parked truck. It was determined that Baur was guilty of contributory negligence. The Court, in holding that the negligence of the driver was to be imputed to Miss Riggs, had this to say:

"The automobile in the present controversy was owned by Miss Riggs. It was being driven by Baur, beside whom she sat, at her specific request; and she enjoyed the legal right and authority to direct the manner of its operation. It was her privilege to demand at any time, if she wished, a cessation of his driving. True, on the occasion of the accident, she was asleep, and was not then actually exercising any control whatever; but nevertheless there still existed the right of directing the car's movements, and Baur, under the circumstances, was her agent and his negligence was imputable to her."

Another case in point is that of Gamet v. Beazley, 62 Wyo. 1, 159 P.2d 916, in which the owner of the car and another had an agreement that one would drive while the other slept. The owner was asleep on the back seat when the driver struck

another car standing on the highway. The driver was guilty of contributory negligence. The Court held that under the circumstances the negligence of the driver was imputable to the owner who was asleep on the back seat. See also, Beam v. Pittsburg Rys. Co., 366 Pa. 360, 77 A.2d 634; 4 Blashfield 670, Sec. 2493, note 25.

■ There is no evidence in this record that Taylor had relinquished his right of control over his automobile to McCumber. The record shows simply that the two men had attended a dance at Beeville for their mutual pleasure and were returning to McCumber's home at Dinero to spend the night. There were only two people who could have known why Taylor turned the driving over to McCumber, and what their agreement, if any, was at the time. These two persons were Taylor and McCumber. Taylor is dead and McCumber, due to the fact that he was rendered unconscious by the impact of the two vehicles, is unable to remember anything that might have been said or done at the time, or why they did not turn off Highway 202 at the first or second opportunity and go on to Dinero. We are thus left with nothing but the presumption that the owner of the automobile, seated next to the driver, was in charge of his own automobile and had the power to direct the driver as to how he wanted his automobile driven. Under such circumstances the negligence of the driver is imputable to the owner of the automobile, and neither he nor his heirs and legal representatives can recover for his injury or death. Beam v. Pittsburg Rys. Co., 366 Pa. 360, 77 A.2d 634; Hubbard v. Lock Joint Pipe Co., D.C.Mo., 70 F.Supp. 589; Grover v. Sharp & Fellows Contracting Co., 82 Cal. App.2d 515, 186 P.2d 682; Rogers v. Johnson, 94 Ga.App. 666, 96 S.E.2d 285; Rigdon v. Crosby, 328 Ill.App. 399, 66 N.E.2d 190; Wagner v. McKernan, 198 Okl. 425, 177 P. 2d 511; Mannix v. Lamberton, 167 Pa. Super. 393, 74 A.2d 515; Snyder v. Missouri Pac. R. Co., 183 Tenn. 471, 192 S.W. 2d 1008; Riggs v. F. Strauss & Son, supra; Gamet v. Beazley, supra; Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195; Straffus v. Barclay, 147 Tex. 600, 219 S.W. 2d 65; Hammond v. Hazard, 40 Cal.App. 45, 180 P. 46; Baker v. Maseeh, 20 Ariz. 201, 179 P. 53; Atwood v. Garcia, 167 Miss. 144, 147 So. 813; Brucker v. Gambaro, Mo., 9 S.W.2d 918; Riley v. Speraw, 42 Ohio App. 207, 181 N.E. 915; Thompson v. Malone & Hyde, 16 Tenn.App. 152, 65 S. W.2d 1079.

■ The rule is well stated in Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014, at page 1025, as follows:

"It is the preponderance of juristic authority that the negligence of the driver of an automobile is not ordinarily imputable to a mere guest, or to a passenger who is riding in the automobile, but who has no authority or control either over the automobile or over the driver thereof. But it is likewise the preponderance of juristic authority that the negligence of the driver of an automobile is imputable and attributable to the owner of the automobile, especially where, as in the instant case, the owner is personally present in the automobile, and where the owner and the driver of the automobile are engaged in a joint journey or enterprise, either of business or pleasure. Such is the prevailing rule in our own state and jurisdiction."

In Rigdon v. Crosby, 328 Ill.App. 399, 66 N.E. 190, the Court held that where the owner of an automobile is riding in it, he has not only the right to possession of it, but has such possession, and he necessarily retains the power and the right of controlling the manner in which it is being driven, unless he has contracted away or abandoned that right, and he furthermore has the duty to control the driver.

We see no necessity to discuss other questions herein raised. Accordingly, the judgment of the trial court will be reversed and judgment here rendered that appellee take nothing and pay all costs.

Reversed and rendered.